# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| GERALD FERRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:12-cv-03905-VEH-TMP |
| | ) |
| DWAYNE ESTES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Gerald Ferrell, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged. Plaintiff is currently incarcerated at Limestone Correctional Facility in Harvest, Alabama. Plaintiff names as defendants Warden Dwayne Estes, Warden Carter, Classification Specialists Burrows and Jackson, Alabama Department of Corrections Associate Commissioner of Health Services Ruth Naglich, and Corizon, Inc.  Plaintiff seeks monetary and injunctive relief.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## FACTUAL ALLEGATIONS

In September 2010, plaintiff was incarcerated at Easterling Correctional Facility at a Level 4 medical code. (Compl. at 3.)  Plaintiff was sent to a cardiologist in Montgomery, Alabama.  *Id*.  Plaintiff complied with the cardiologist's recommendations by losing weight.  *Id*.  The cardiologist cleared plaintiff and his medical code was changed to work release status.  *Id*.  From there, plaintiff was transferred to Atmore Work Center and, later, to Alexander City Work Center.  *Id*.

A doctor at Bibb Correctional Facility examined plaintiff and cleared him medically to work on the removal of debris from a lake after a tornado. (Compl at 3.) After the clean up was completed, plaintiff was transferred to Decatur Work Release. *Id*. Mr. Burrows, Head Classification Officer, sent plaintiff to Limestone Correctional Facility for a medical clearance. *Id*. The doctor at Limestone cleared plaintiff to work and sent him back to Decatur Work Release. *Id*.

Plaintiff claims that Mr. Burrows has a "personal vendetta" against him and that Mr. Burrows stated that he was going to put plaintiff back in the prison. (Compl. at 3.) After Burrows "called Montgomery," Ruth Naglich, the Associate Commissioner of Health Services, put plaintiff back on a Level 4 medical status.[1] *Id*.

At Limestone Correctional Facility, officials on the Job Board, under the supervision of Warden Estes, informed plaintiff that he would be written up if he did not work. (Compl. at 4.) Defendants determined that plaintiff was not eligible for work release due to his health, but he was nevertheless forced to work in the kitchen at Limestone. *Id*. There, he lifted large boxes and heavy garbage cans. *Id*.

Plaintiff contends that defendants are prohibiting him from participating in work release even though he was previously classified as a minimum-out security inmate and medically cleared by outside and institutional doctors to work. *Id*.

---

[1] It appears that plaintiff was then transferred to Limestone Correctional Facility.

Plaintiff seeks monetary relief and requests that he be placed in minimum-out security status according to the Classification Regulations. *Id*. He also seeks a preliminary injunction prohibiting defendants from retaliating against him.

## DISCUSSION

### A. Sovereign Immunity.

To the extent plaintiff's constitutional claims are brought against the defendants in their official capacities for money damages, such claims are due to be dismissed under the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest." *Id*. at 101. Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 (11th Cir. 1990).

Based on the foregoing, plaintiff's claims against the defendants, in their official capacities for monetary relief, are due to be dismissed. The remainder of this

report and recommendation will address plaintiff's claims against defendants in their individual capacities.

**B.     Fourteenth Amendment – Due Process.**

Plaintiff alleges that he was no longer qualified for work release after his medical code was raised to a Level 4.  As a result, he was transferred from work release to Limestone Correctional Facility and ordered to work within the prison. Liberally construing plaintiff's complaint, he alleges that defendants violated his right to due process by changing his classification level so that he was transferred from work release to a more restrictive prison.

An inmate has a right not to be deprived of a protected liberty interest without due process of law.  Therefore, to prevail on his claim that the change in his classification level violated his constitutional right to due process, plaintiff must establish that he had a liberty interest in work release. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) ("The requirements of procedural due process apply only to the deprivation interests encompassed by the Fourteenth Amendment's protection of liberty . . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).

The U.S. Supreme Court in *Sandin v. Conner* explained that there are two instances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.

"The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The second is when state law, under certain circumstances, creates a liberty interest protected by the Due Process Clause in the context of "disciplinary changes in a prisoner's conditions of confinement . . . ." *Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir. 1996) ( quoting *Sandin v. Conner*, 515 U.S. 472 (1995)).  Those state created interests would be "limited to freedom[s] from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

Plaintiff's transfer from work release to Limestone Correctional Facility does not present "the type of atypical, significant deprivation [that] might conceivably create a liberty interest," *Sandin*, 515 U.S. at 486, nor does it constitute a "dramatic departure" from the ordinary conditions of confinement. *See Sandin v. Conner*, 515 U.S. at 458.  While the conditions of confinement at Limestone Correctional Facility are less amenable and certainly more restrictive than work release, plaintiff has not established that the conditions at Limestone created a "major disruption" in his

environment or unexpectedly exceeded his sentence in a manner that would evoke the protections of the Due Process Clause. *Id.* at 486-87.

Moreover, a convicted prisoner has no constitutionally protected right to confinement in a particular correctional facility. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (no liberty interest arising from Due Process Clause in obtaining transfer to less secure prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.") Although plaintiff's confinement at Limestone may include more burdensome conditions than that of less secure work release facilities, his confinement is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id*. Based on the foregoing, plaintiff's transfer from work release to Limestone Correctional Facility does not rise to the level of a constitutional violation and his due process claim against defendants is due to be dismissed for failing to state a claim upon which relief may be granted.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that plaintiff's complaint be DISMISSED for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed

before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DATED this 24th  day of October, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE